IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HARLEY-DAVIDSON CREDIT
CORPORATION, a Nevada corporation,

Plaintiff,

No. 3:11-cv-1317-HZ

OPINION & ORDER

v.

ANDY TURUDIC, individually,

Defendant.

Daniel C. Fleming
Micci J. Weiss
WONG FLEMING PC
821 Alexander Road, Ste 150
Princeton, NJ 08543-3663

Michael P. O'Rourke
O'ROURKE LAW GROUP, PC
800 Fifth Avenue, Ste 4100
Seattle, WA 98104

Attorneys for Plaintiff

Andy Turudic
P.O. Box 371
Hillsboro, OR 97123

Pro se Defendant

HERNANDEZ, District Judge:

Now before me is a Motion for Order to Dismiss Counterclaims and Third-Party Complaint and to Strike Affirmative Defenses and for Summary Judgment ("Motion to Dismiss and for Summary Judgment") (doc. #12) filed by Harley-Davidson Credit Corp. ("HDCC" or "Plaintiff").  Andy Turudic ("Turudic" or "Defendant"), pro se, filed a Counter-Motion for Summary Judgment, to Conform the Pleadings to the Evidence, to Strike, and Motion to Dismiss Plaintiff's Claims ("Counter-Motion") (doc. #23).  For the reasons that follow, Plaintiff's Motion to Dismiss and for Summary Judgment is GRANTED in part and DENIED in part, and Defendant's Counter-Motion is DENIED.

## BACKGROUND

This action arises out of two agreements–the Aircraft Secured Promissory Note ("Promissory Note") and Aircraft Security Agreement ("Security Agreement")–entered into between Defendant and Eaglemark Savings Bank ("Eaglemark") on June 28, 2007. Under the Promissory Note, Eaglemark agreed to lend Defendant $132,000 for the purchase of a Mooney Model M20K aircraft (the "Aircraft").  Compl., Ex. A, pp. 1-2.  As security for the loan, Eaglemark and Defendant entered into the Security Agreement under which Eaglemark was granted a security interest in the Aircraft.  Compl., ¶ 7; Id., Ex. C, § 1.  The Complaint alleges that the Promissory Note and the Security Agreement were assigned to Plaintiff, and indeed, the Promissory Note provides that the Promissory

2 - OPINION & ORDER

Note would "automatically be assigned" to Harley-Davidson Credit Corp. upon funding

of the Aircraft and the Security Agreement provides that it would "automatically be

assigned" to Harley-Davidson Credit Corp. upon assignment of the Promissory Note.

Compl., ¶¶ 6-7; Id., Ex. A, § 10; Id., Ex. B, §12.

On April 2, 2011, Defendant repudiated the Promissory Note and stopped making

his required loan payments. See Id., ¶¶ 8-9; see also Answer, ¶¶ 47, 89. On November 2,

2011, Plaintiff filed this action alleging breach of contract by Defendant.

## STANDARDS

### I. Motion to Strike

Rule 12(f) of the Civil Rules of Civil Procedure ("Rule") provides that "[t]he

court may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent or scandalous matter . . . on its own . . . or . . . on motion . . . ." Fed. R. Civ.

P. 12(f). Granting a motion to strike is within the discretion of the district court. See

Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt., 921 F.2d 241, 244 (9th Cir. 1990).

### II. Motion to Dismiss

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to

dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." Id. The court construes pro se

pleadings "liberally," affording plaintiffs the "benefit of any doubt." Hebbe v. Plier, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

### III. Motion for Summary Judgment

Summary judgment is proper if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Rule 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (quotation omitted). The non-moving party must come forward with more than "the mere existence of a scintilla of evidence." Id. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be

drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting

Anderson, 477 U.S. at 255).

## DISCUSSION

### I. Application of Nevada Law

The Promissory Note and Security Agreement both contain choice-of-law

provisions, which provide that the "laws of the State of Nevada and applicable Federal

laws" are to govern the Promissory Note and Security Agreement.  Compl., Ex. A, § 8;

Id., Ex. B, § 11.  Oregon courts enforce choice-of-law provisions, except where it would

be unreasonable to do so because the chosen state has no substantial relationship to the

parties or application of the chosen state's law would be contrary to fundamental Oregon

policy.  See, e.g., Capital One Bank v. Fort, 242 Or.  App. 166, 170-71 (2011).  Neither

party argues that either of the exceptions to Oregon's general rule of enforcing

contractual choice-of-law provisions applies here.  As such, I interpret the provisions of

the Promissory Note and Security Agreement in accordance with Nevada law.

### II. Third-Party Complaint

Although Defendant asserted a third-party complaint against Eaglemark, Harley-

Davidson Financial Services, Inc. ("HDFS"), and Harley-Davidson, Inc. ("HDI") in his

Answer, Defendant voluntarily dismissed it.  See Def.'s Counter-Mot., pp. 2, 16.

Accordingly, to the extent Defendant asserted a third-party complaint in his Answer, it is

dismissed without prejudice pursuant to his voluntary dismissal.

### III. Plaintiff's Motions

Plaintiff filed the following motions: (1) a motion to dismiss Defendant's first

counterclaim for breach of contract and breach of the implied warranty of good faith and

fair dealing; (2) a motion to strike all of Defendant's affirmative defenses; and (3) a

motion for summary judgment in favor of its breach of contract claim.

### A. Motion to Dismiss Defendant's Counterclaim for Breach of Contract

Plaintiff seeks to dismiss Defendant's counter-claim for relief, which alleges that

Plaintiff "breach[ed] the implied warranty of good faith and fair dealing by acting

unreasonably . . . [thereby] den[ying] Defendant the benefits . . . [that he] had under the

contract". Answer, ¶¶ 16-17. Defendant's counter-claim alleges that Plaintiff had an

"implied contractual duty to . . . protect [Defendant's] financial interests" and that

Plaintiff breached the implied covenant of good faith and fair dealing by not providing

Defendant with a valuation for the Aircraft and by not assisting him in selling the

Aircraft. Id., ¶¶ 28, 46-47. Plaintiff argues that Defendant's counter-claim fails to

identify any provision in the Promissory Note or the Security Agreement obligating

Plaintiff to protect Defendant's financial interests.

Every contract imposes upon each party a duty of good faith and fair dealing in its

performance and execution. A.C. Shaw Contr. v. Washoe Cnty., 105 Nev. 913, 914

(1989). To establish a claim for breach of the covenant of good faith and fair dealing,

Defendant must allege: (1) Plaintiff and Defendant were parties to a contract; (2) Plaintiff

owed a duty of good faith to Defendant; (3) Plaintiff breached that duty by performing in

a manner that was unfaithful to the purpose of the contract; and (4) Defendant's justified

expectations were denied. Blades v. Wells Fargo Bank NA, No. 2:11-CV-01389-KJD,

2012 WL 2885133, at *3 (D. Nev. 2012) (citations omitted). "A plaintiff may assert an

action if the defendant intentionally breaches the intention and spirit of the agreement."

Id. An action for breach of the implied covenant of good faith and fair dealing, however,

arises only "in rare and exceptional cases"–when there is a special relationship between the parties.  Ins. Co. of the W. v. Gibson Tile Co., Inc., 122 Nev. 455, 461 (2006).  A special relationship is "characterized by elements of public interest, adhesion, and fiduciary responsibility".  Id.  Nevada law does not recognize a fiduciary relationship between a lender and borrower.  See Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 882 (9th Cir. 2007).

The Promissory Note states that upon default by Defendant, Plaintiff "may . . . without notice and without demand, declare all of [Defendant's] obligations immediately due and payable . . . and proceed with any and all remedies set forth in the [Promissory Note] . . . or such other remedies as shall be provided by law."  Compl., Ex. 1, § 5.  It also states that Plaintiff "can delay or refrain from enforcing any of its rights under [the Promissory] Note without losing them."  Id., Ex. 1, § 6.

The Security Agreement states that upon Plaintiff's default, Plaintiff may "without notice and without demand":

> (a) Declare all of [Defendant's] obligations immediately due and payable . . .; (c) Take possession, by its agents or otherwise, of the Collateral wherever found, without or without notice of process of law, and hold, store and/or use, operate, manage and control the Collateral, and collect and receive any profits of the Collateral and every part thereof.

Id., Ex. B., § 9.

The Security Agreement also states that "[a]ny accessories, equipment or replacement parts will remain with the Collateral."  Id.  Finally, the Security Agreement states that Plaintiff has the right to:

> (e) Retain the Collateral in full satisfaction of the obligations secured thereby, or sell the Collateral at either a public or private sale, or both by way of one or more contracts or transactions, for cash or on terms, in such

manner and such places as is commercially reasonable . . . ; [and] (h) Take
legal proceeding, with or without taking possession of the Collateral . . . ."

Id.

Defendant's counter-claim fails because a special relationship does not exist
between the parties since Plaintiff and Defendant are considered adversaries, not
fiduciaries, to the Promissory Note and Security Agreement. In addition, Defendant's
counter-claim fails because other than Defendant's conclusory assertion that Plaintiff was
required to provide him with a valuation for the Aircraft, assist him in selling the
Aircraft, or otherwise protect his financial interest, nothing in the Promissory Note or the
Security Agreement requires or implies Plaintiff had such obligations. Furthermore, it is
not enough that Defendant believes Plaintiff was required to provide him with a valuation
for the Aircraft, assist him in selling the Aircraft, or otherwise protect his financial
interest. Defendant alleges no facts supporting his conclusory assertion that Plaintiff was
required to provide him with a valuation for the Aircraft, assist him in selling the
Aircraft, or otherwise protect his financial interest.

Additionally, Defendant pleads no facts demonstrating that his justified
expectations were denied. In fact, Defendant readily admits that he received the
promised $132,000 loan amount to purchase the Aircraft and concedes that he
anticipatorily repudiated the Promissory Note and materially breached the Promissory
Note by failing to remit his required payments.[1] See Answer, ¶¶ 21, 47; Counter-Mot., p.
27; Def.'s Reply, p. 8.

---

[1] "A valid contract must exist at the time of interference, and the termination of a contract
negates its continued existence, but it is incorrect that a party's rights under a contract
evaporate upon breach. On the contrary, the right to sue upon a contract typically
requires a breach (or anticipatory repudiation)." WMCV Phase 3, LLC v. Shushok &

In sum, Defendant's conclusory and factual allegations, even when assumed to be true, are simply insufficient to support his claim for breach of the implied warranty of good faith and fair dealing.  See Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676 F.3d 829, 835 (9th Cir. 2012) ("[C]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss.") (Citation omitted).  Defendant cannot plausibly state a claim for a breach of the implied covenant of good faith and fair dealing. Accordingly, Plaintiff's motion to dismiss Defendant's counter-claim is granted.[2]

### B. Motion to Strike Defendant's First Affirmative Defense

Plaintiff seeks to strike Defendant's first affirmative defense, which alleges failure to state a claim.  Answer, ¶ 15.  Plaintiff argues it has properly alleged that the Promissory Note and Security Agreement are valid contracts and that Defendant breached those contracts.  Defendant contends Plaintiff is not a party to the Promissory Note or the Security Agreement and therefore, lacks standing to bring this action. Defendant also argues that the Promissory Note and Security Agreement were never assigned because they were "conditional and [were] 'pursuant to' a Master Assignment Agreement – Aircraft ('MAAA')".  Counter-Mot., p. 18.

"Construction of a contractual term is a question of law . . . ."  Anvui, LLC v. G.L. Dragon, LLC, 123 Nev. 212, 215 (2007) (internal quotations and citation omitted). In Nevada, a breach of contract occurs when (1) there is an enforceable contract; (2) the

---

McCoy, Inc., 750 F. Supp. 2d 1180, 1195-96 (D. Nev. 2010).  "[A]n anticipatory repudiation of contractual duties by one party to the contract excuses performance by the other."  Goldstein v. Turnberry Pavilion Partners Ltd. P'ship, No. 2:07-CV-00387-LRH-VPC, 2008 WL 2622976, at *3 (D. Nev. 2008) (citation omitted).

[2] In his reply, Defendant concedes he stopped making payments, but contends that after repudiation of a contract, a "default cannot occur until a determination of law under due process has occurred."  Def.'s Reply, p. 8.  Defendant's proposition is unsupported by any authority and accordingly, lacks merit.

plaintiff performed or was excused from performing; (3) the defendant failed to perform; and (4) the plaintiff was damaged as a result of the defendant's failure to perform. Birkland v. Countrywide Home Loans, Inc., No. 2:11-CV-00502-GMN, 2012 WL 83773, at *4 (D. Nev. 2012). The court is to "effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself." Anvui, LLC, 123 Nev. at 215 (internal quotations and citation omitted). A contract is ambiguous if it is subject to more than one reasonable interpretation. Id. "Any ambiguity . . . should be construed against the drafter." Id.

The Promissory Note states that "[u]pon receipt and funding of [the Promissory] Note by Eaglemark Savings Bank, . . . [the Promissory] Note will automatically be assigned to Harley-Davidson Credit Corp, pursuant to the 'Master Assignment Agreement – Aircraft' in effect between Eaglemark Savings Bank and Harley-Davidson Credit Corp." Compl., Ex. A, § 10. Similarly, the Security Agreement states that "[u]pon assignment of the Promissory Note identified in Paragraph FIRST, [the] . . . Security Agreement will automatically be assigned to Harley-Davidson Credit Corp., pursuant to the Master Assignment Agreement – Aircraft in effect between Eaglemark Savings Bank and Harley-Davidson Credit Corp." Id., Ex. B, §12.

Defendant argues that the term "pursuant to" means that the assignments of the Promissory Note and Security Agreement were "conditional" upon the MAAA or made the MAAA a "prerequisite" to the assignments. Counter-Mot., pp. 7, 18; Def.'s Reply, pp. 6-7. Defendant's interpretation of the term "pursuant to" in context of the plain language of the Promissory Note and Security Agreement is misplaced. Contrary to Defendant's contention, it is clear that the assignment of the Promissory Note was to

occur "upon receipt and funding" of the Promissory Note and that the assignment of the Security Agreement was to occur "upon assignment of the Promissory Note". The term "pursuant to the MAAA" within the context of the plain language of the Promissory Note and Security Agreement means "as set forth under" or "in accordance with" the MAAA, which under the unambigious language of the contracts was already "in effect" between Eaglemark and HDCC. See Compl., Ex. A, § 10; Id., Ex. B, § 12 Simply stated, the term "pursuant to" did not make the assignments "conditional" upon the MAAA or make the MAAA conditions precedent to the assignments. Notably, my construction of the term "pursuant to" is consistent with the principle that "[i]mplied conditions . . . in contracts . . . are not lightly to be presumed". Mason v. Artworks Pictures, LLC, No. 03:03-CV-00188-LRH-VPC, 2008 WL 2486029, at *4 (D. Nev. 2008) (citation omitted).

In light of the plain language of the Promissory Note and Security Agreement, I decline to adopt Defendant's proposed construction and conclude that the plain language of the contracts did not make the assignments of the Promissory Note and Security Agreement "conditional" upon the MAAA or make the MAAA a "prerequisite" to the assignments.[3]

Defendant also contends that Plaintiff lacks standing because the Federal Aviation Administration ("FAA") records show that a Harley Davidson Credit Corp. of Texas "was the exclusive holder of [the] security interest in the Aircraft", not a "Nevada corporation" as Plaintiff is here. Counter-Mot., p. 17; see also Answer, ¶ 94. Defendant argues that Plaintiff "is a distinctly separate entity, incorporated and based in Nevada,

---

[3] Defendant contends that the document Plaintiff submits as the MAAA is not, in fact, the MAAA. Defendant's argument is inapposite because as stated above, the assignments of the Promissory Note and Security Agreement were not "conditional" upon the MAAA and the MAAA was not a "prerequisite" to the assignments.

with no State authority to operate as an entity within Texas . . ., despite using the same name as a foreign entity in Texas also called HDCC." Counter-Mot., p. 17. In support of his proposition, Defendant relies on the Aircraft Title Report from FAA Records Search ("Title Report") and the Notice of Default sent to him on June 30, 2011. Compl., Ex. C, pp. 1-2.

A review of the Title Report shows that the Security Agreement was drawn "[i]n [f]avor [o]f . . . Eaglemark Savings Bank" having a mailing address in Carson City, Nevada. Id., p. 1. The Title Report also shows that it was addressed to Amy Kaffen ("Kaffen"), located at Harley Davidson Credit Corp. with a Plano, Texas, mailing address. Id. The June 30, 2011, Notice of Default was sent by Kaffen to Plaintiff on Harley-Davidson Credit Corp. letterhead displaying the same Plano, Texas, mailing address displayed in the Title Report. Id., Ex. D, p. 1.

The evidence and arguments proffered by Defendant simply do not demonstrate that Plaintiff lacks standing to bring this action. Stated above, the undisputed record shows that Eaglemark had a security interest in the Aircraft and that Eaglemark properly assigned the Promissory Note and Security Agreement to "Harley-Davison Credit Corp." See Compl., ¶¶ 6-7; Id., Ex. A, § 10; Id., Ex. B, §12; Id., Ex. C, p. 1. The fact that the Title Report and June 30, 2011, Notice of Default shows Harley-Davidson Credit Corp. using a Plano, Texas, mailing address is insufficient to establish that Plaintiff lacks standing. Simply put, the Harley-Davidson Credit Corp. now before me is a proper party which may pursue this action. Plaintiff's motion to strike Defendant's first affirmative defense is granted.

/ / /

### C. Defendant's Remaining Affirmative Defenses Two Through Nine

Plaintiff seeks to strike Defendant's remaining affirmative defenses: affirmative defenses two through nine. Defendant's remaining affirmative defenses allege failure to mitigate damages, failure to disclose the diminution of the valuation in the Aircraft, unclean hands, unjust enrichment, "fraud, deceit or misrepresentation", lack of standing, and "failure to take legal action for a long time". Answer, ¶¶ 79, 83, 87, 88, 91, 94, 102. Defendant does not specifically respond to Defendant's motion to strike his affirmative defenses. Rather, he argues: (1) there is no party with a security interest in the Aircraft; (2) Plaintiff's repossession of the Aircraft amounted to conversion; and (3) Plaintiff has no contractual right to possession of the record logs. Defendant also makes a number of "objections" to Plaintiff's "alleged facts" and proffered evidence.

### 1. Defendant's Second Affirmative Defense

Defendant's second affirmative defense alleges failure to mitigate damages. Defendant alleges Plaintiff "failed to mitigate damages [by] . . . failing to disclose the diminution of valuation of the aircraft to [him] as required by the implied contract between the parties and as is evident in the [Promissory] Note and [Security] Agreement." Id., ¶ 79. Defendant also alleges that Plaintiff "failed to mitigate damages [by] . . . fail[ing] to act expediently in selling the aircraft at the time Defendant repudiated the contract . . . ." Id., ¶ 80. Finally, Defendant alleges Plaintiff is not "entitled to interest and/or attorneys' fees when it allowed them to add up unnecessarily by refusing a reasonable settlement offered by Defendant and in failing to take prompt action to collect the alleged debt, to try to obtain a reasonable settlement with Defendant; and/or to file a lawsuit in Court to collect." Id., ¶ 81.

Plaintiff contends Defendant's second affirmative defense fails because Plaintiff was allowed to delay enforcing its rights under the Promissory Note and was entitled to initiate this action against Defendant in accordance with the terms of the Promissory Note and Security Agreement.

In Nevada, "a party cannot recover damages for loss that he could have avoided by reasonable efforts." Conner v. S. Nev. Paving, Inc., 103 Nev. 353, 355 (1987). However, "[i]f a course of action chosen by a plaintiff in responding to the damage caused him by the defendant was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damages." A.I. Credit Corp. v. Gohres, 299 F. Supp. 2d 1156, 1162 (D. Nev. 2004).

Defendant's factual allegations, even when assumed to be true, do not support his defense that Plaintiff failed to mitigate damages. Nothing in the Promissory Note or Security Agreement required Plaintiff to provide Defendant with assistance after he breached the contracts. Additionally, nothing in the record supports Defendant's conclusory allegations that there was an "implied contract" between the parties requiring Defendant to "disclose the diminution of valuation of the aircraft to Defendant", that Plaintiff was required to accept any of Defendant's alleged settlement offers, or that Plaintiff was required to sell the Aircraft "at the time Defendant repudiated the contract." Rather, Defendant's assertions runs contrary to the plain language of the Promissory Note and the Security Agreement, which set forth, among other things, that Plaintiff could "delay or refrain from enforcing any of its rights under . . . [the Promissory] Note without losing them"; "[r]etain the Collateral in full satisfaction . . . or sell the Collateral at either a public or private sale . . . in such a manner and such places as is commercially

reasonable"; "[t]ake legal proceeding, without or without taking possession of the Collateral"; and "[t]ake possession . . . of the Collateral . . . and hold, store and/or use [the Collateral]".  Compl., Ex. A, § 6; Id., Ex. B, § 9.  Nothing in the record before me demonstrates Plaintiff was obligated to "expediently" sell the Aircraft "at the time Defendant repudiated the contract".  Finally, Defendant fails to allege any facts or proffer any evidence demonstrating that mitigation in this instance was reasonably possible.  Plaintiff's motion to strike Defendant's second affirmative defense is granted.

## 2. Defendant's Third Affirmative Defense

Defendant's third affirmative defense alleges Plaintiff failed to disclose "the diminution of [A]ircraft valuation" thereby (1) preventing Defendant from "comply[ing] with the [Promissory Note, which precluded Defendant from] permit[ting] anything to be done which could reasonably be expected to invalidate or limit . . . [the] insurance policy or policies"; (2) preventing Defendant from "tak[ing] action to mitigate the losses to both parties by selling the [A]ircraft in the retail marketplace"; (3) and preventing Defendant from "tak[ing] possession of the [A]ircraft without unnecessary delay in order to mitigate the losses to both parties."  Answer, ¶¶ 83-85.  As stated above, neither the Promissory Note nor the Security Agreement required Plaintiff to disclose to Defendant the alleged "diminution of the Aircraft valuation".  Compl., Ex. A, § 6; Id., Ex. B, § 9.  Additionally, under the Security Agreement Plaintiff was entitled to "[t]ake possession . . . of the Collateral . . . and hold, store and/or use [the Collateral]" and "[r]etain the Collateral in full satisfaction" of Defendant's obligations.  Id., Ex. B, § 9.  The allegations in Defendant's third affirmative defense are insufficient to support a defense for failure to

disclose the diminution in valuation of the Aircraft.  Plaintiff's motion to strike

Defendant's third affirmative defense is granted.

### 3. Defendant's Fourth Affirmative Defense

Defendant's fourth affirmative defense alleges unclean hands.  Defendant alleges

"Plaintiff is attempting to benefit from its wrongdoing . . . [by] . . . failing to disclose the

diminution of valuation of the aircraft, [thereby] . . . continu[ing] to collect both principal

and interest on the balance of the original loan."  Answer, ¶ 87.  In Nevada, "[t]he

doctrine of unclean hands bars a party from receiving equitable relief because of that

party's own inequitable conduct."  Reed v. AMCO Ins. Co., No. 3:09-CV-0328-LRH-

RAM, 2012 WL 556265, at *2 (D. Nev. 2012) (citations and internal quotation marks

omitted).  Defendant's unclean hands defense fails because as discussed above, nothing

in the record before me demonstrates that Plaintiff had a duty to provide Defendant with

a valuation of the Aircraft.  In addition, the claims Plaintiff brings here sound in contract,

not equity.  Because Plaintiff is not seeking equitable relief, Defendant's defense of

unclean hands is not available against Plaintiff's claims.  See Id.  (concluding that

because all of plaintiff's "claims [were] contractual in nature and . . . [sought] solely

monetary damages", there was "no basis for [defendant] to allege the affirmative defense

of unclean hands").

### 4. Defendant's Fifth Affirmative Defense

Defendant's fifth affirmative defense alleges Plaintiff was unjustly enriched.

Defendant alleges that if the valuation of the Aircraft is "lower than the loan amount,

Plaintiff has already been unjustly enriched by receiving principal from Defendant, when,

in fact, the amount due to Defendant is at least $23,000–the cost of components and

repairs for the catastrophic destruction . . . of the alternator and engine . . . ."  Answer, ¶

89.  Defendant also alleges:

> Plaintiff's claimed amount due of $125,361.07 plus $3,006.02, which
> includes 4 months of late charges and the claimed per diem amount,
> totaling 128,367.09 would unjustifiably enrich Plaintiff by $31,656.51 . . .
> because Plaintiff delayed in taking action after Defendant repudiated the
> contract on April 19, 2012[, and] since Plaintiff has demonstrated a selfish
> interest to date and will likely "liquidate" the aircraft on the wholesale
> market . . . .

Id.

Defendant's defense fails.  In Nevada, "[a]n action based on a theory of unjust

enrichment is not available when there is an express, written contract, because no

agreement can be implied when there is an express agreement."  Leasepartners Corp. v.

Robert L. Brooks Trust Dated November 12, 1975, 113 Nev. 747, 755 (1997) (citation

omitted).  Here, it is undisputed that the express, written agreements–namely, the

Promissory Note and Security Agreement–govern this action.  "The doctrine of unjust

enrichment . . . applies to situations where there is no legal contract but where the person

sought to be charged is in possession of money or property which in good conscience and

justice he should not retain but should deliver to another [or should pay for]."  Id. at 756

(citations omitted); see also Lipshie v. Tracy Inv. Co., 93 Nev. 370, 379 (1977) ("To

permit recovery by quasi-contract where a written agreement exists would constitute a

subversion of contractual principles.").  Because express written contracts govern this

action, Defendant's claim for unjust enrichment lacks merit.  Accordingly, Plaintiff's

motion to strike Defendant's fifth affirmative defense is granted.

/ / /

### 5. Defendant's Sixth Affirmative Defense

Defendant's sixth affirmative defense alleges "Invalid/Illegal Contract".  Answer, ¶ 90.  Defendant conclusory alleges "[t]he contract is invalid/illegal and cannot be enforced . . . because of fraud, deceit or misrepresentation . . . [and] because of impossibility or impracticability . . . ."  Id. ¶¶ 91-92.  Defendant conclusory alleges that he "could not comply with the contract because it was not possible or practical to do so." Id.  Defendant's conclusory legal conclusions and allegations by themselves are insufficient to support  his defense that the Promissory Note and the Security Agreement are illegal or invalid.  Plaintiff's motion to strike Defendant's sixth affirmative defense is granted.[4]

### 6. Defendant's Seventh Affirmative Defense

Defendant's seventh affirmative defense alleges that Plaintiff lacks standing.  As discussed above, Plaintiff has standing to bring this action.  Plaintiff's motion is therefore granted as to Defendant's seventh affirmative defense.

### 7. Defendant's Eighth Affirmative Defense

Defendant's eighth affirmative defense alleges a violation of public policy. Defendant alleges that "Plaintiff had materially breached its contract with Defendant a significant amount of time beforehand."  Answer, ¶ 100.  Defendant further alleges that by removing the Aircraft without a "court order", Plaintiff violated "public policy,

---

[4] Defendant's claim for fraud also fails to meet the heightened pleading standard.  See, e.g., Yess v. CibaGeigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (Rule 9(b) requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged so that the other parties are on "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong") (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

including such acts as unauthorized entry into a locked building, trespass, theft of an aircraft of significant value, and causing a disturbance." Id. Discussed above, Plaintiff was not in breach of the implied warranty of good faith or fair dealing. Additionally, as discussed above, Plaintiff was entitled to repossess the Aircraft pursuant to the terms of the Promissory Note and Security Agreement and did not breach the peace when doing so. Defendant's allegations do not support his defense that Plaintiff violated public policy. Plaintiff's motion is therefore granted as to Defendant's eighth affirmative defense.

### 8. Defendant's Ninth Affirmative Defense

Defendant's ninth affirmative defense relates to the doctrine of laches. Defendant alleges Plaintiff "failed to take legal action for a long time, which caused Defendant . . . to believe the parties' financial interests were not compromised or in jeopardy." Id., ¶ 102. Defendant alleges Plaintiff caused him "significant harm, as Plaintiff is now asking for more money than the plane is allegedly worth, and the implied assurance of valuation by Plaintiff failing to act for a long time significantly damaged Defendant's amount of equity in the [A]ircraft." Id., ¶ 112.

"Laches is an equitable doctrine . . . ." E.g., Building and Constr. Trades Council of N. Nev. v. State ex rel. Public Works Bd., 108 Nev. 605, 610 (1992) (citation omitted). "Laches is more than mere delay in seeking to enforce one's rights, it is delay that works a disadvantage to another." Home Sav. Ass'n v. Bigelow, 105 Nev. 494, 496 (1989) (citing Cooney v. Pedroli, 49 Nev. 55, 62 (1925)). "The condition of the party asserting laches must become so changed that he cannot be restored to his former state." Id. "It is well-established that '[e]specially strong circumstances must exist to sustain the defense

of laches when the statute of limitations has not run.'"[5]  Id. (citing Lanigir v. Arden, 82

Nev. 28, 36 (1966)).

Defendant's contention that Plaintiff's claims are barred by the equitable doctrine

of laches fails.  First, Plaintiff's breach of contract action sounds in law, not equity.

Second, it is undisputed that Plaintiff filed this action on November 2, 2011, just seven

months after Defendant's repudiation.  I cannot conclude that there are especially strong

circumstances here that sustain Defendant's defense of laches or that Plaintiff's actions

were so delayed that Defendant was changed to the point where he cannot be restored to

his former state.  Based on the above, Plaintiff's motion against Defendant's ninth

affirmative defense is granted.

### D. Plaintiff's Motion for Summary Judgment

In addition to the motion to dismiss and motion to strike, Plaintiff also filed a

motion for summary judgment.  For the reasons discussed below, Plaintiff's motion for

summary judgment is granted in part and denied in part.

### 1. Breach of Contract and Damages

Count II of the Complaint alleges breach of the Promissory Note.  Compl., ¶¶ 29-

34.  Plaintiff seeks summary judgment on its breach of contract claim on the bases that

Defendant failed to fulfill its obligations under the Promissory Note when he stopped

making the required payments.  Plaintiff contends it is entitled to damages and attorneys'

fees and costs.  It further contends it is entitled to an order directing Defendant to release

---

[5] In Oregon, "[a] claim in equity is subject to the doctrine of laches, which dictates that a
party may not delay in asserting a claim for an unreasonable amount of time after
obtaining full knowledge of the relevant facts when the delay results in substantial
prejudice to the opposing party."  Fireman's Fund Ins. Co. v. U.S. Fidelity and Guar. Co.,
No. CV-09-263-HU, 2009 WL 2257393, at *8 (D. Or. 2009) (citation omitted).

his lien on the Aircraft or in the alternative, an order terminating Defendant's lien on the Aircraft.

Discussed above, Defendant's repudiation of the contract and his refusal to make further monthly loan payments amounted to breach of the Promissory Note. I, however, agree with Defendant that he is entitled to the value of the "unencumbered property" in the Aircraft, namely the engine and ballast. Plaintiff argues that it has a secured interest in the engine because "[i]n requiring . . . Defendant to place unencumbered replacement parts in the Aircraft, [Plaintiff] is protecting its security interest in the Aircraft as provided for in Section 1 of the . . . Security Agreement . . . ." See Pl.'s Resp. and Reply, p. 11 (doc. #24). The plain language of the Security Agreement does not support Plaintiff's argument. The Security Agreement provides:

> 5. Maintenance and Repair. . . . . Borrower shall, at its expense, do or cause to be done each and all of the following: . . . (c) Replace in or on the Airframe, any and all [e]ngines, parts, appliances, instruments or accessories which may be worn out, lost, destroyed or otherwise rendered unfit for use, with unencumbered title to such replacement parts vesting in Borrower upon installation . . . .

Compl., Ex. B, § 5.

The Security Agreement makes clear that replacement of any and all "[e]ngines" and "parts" rendered "unfit for use" result in "unencumbered title" "vesting in [Defendant] upon installation." Id., Ex. B, p. 1. Plaintiff does not dispute that the original engine and alternator which Defendant replaced were "unfit for use". With respect to the ballast, the Security Agreement provides Plaintiff "retains a security interest in the Collateral . . . including . . . the airframe, engine(s), propeller(s), and spare parts, if applicable, being purchased, and any of the following that are purchased and financed in connection with the [Promissory] Note . . . ." Id., Ex. B, § 1 (emphasis

added).  Plaintiff does not argue–let alone demonstrate an absence of a genuine issue of

material fact–that the ballast installed by Defendant after he had already purchased the

Aircraft was "purchased and financed in connection with the [Promissory] Note".  Id.

Defendant's argument that he has unencumbered title to the replaced engine, alternator,

and ballast installed in the Aircraft has merit.  At best, the language of the Promissory

Note and the Security Agreement as they relates to the replaced engine, alternator, and

ballast are ambiguous and therefore, must be construed against the drafter.  See Anvui,

LLC, 123 Nev. at 215.

Plaintiff's motion for summary judgment concerning his breach of contract claim

is granted.  However, Plaintiff's request for release of Defendant's lien on the Aircraft–

including the repaired engine, alternator, and ballast–and request for damages and

attorneys' fees and costs are denied.

## 2. Possession of the Logbooks

Plaintiff asserts that it is entitled to the possession of the Aircraft logbooks

pursuant to ORS 79.0609(1)(a) and (2)(a).  It also contends it is entitled to an order for

issuance of provisional process pursuant to Rule 83(A)(12) of the Oregon Rules of Civil

Procedure ("ORCP").[6]  Plaintiff asserts that pursuant to the terms of the Security

Agreement, it is entitled to the possession of the Aircraft logbooks.

---

[6] ORCP 83(A)(12) provides that "[t]o obtain an order for issuance of provisional process"
the court "shall consider whether it shall order issuance of provisional process, as
provided in section D of this rule".  ORCP 83(C)(2).  ORCP 83(D) provides:

> [I]f the court finds that before hearing on a show cause order the defendant
> or other person in possession or control of the claimed property is
> engaging in, or is about to engage in, conduct which would place the
> claimed property in danger of destruction, serious harm, concealment,
> removal from this state, or transfer to an innocent purchaser or that the
> defendant or other person in possession or control of the claimed property

22 - OPINION & ORDER

Defendant responds that Plaintiff is not entitled to the possession of the logbooks because "the loan from [Eaglemark] was 'towards', not 'for' the purchase of the aircraft". Counter-Mot., p. 8.  Defendant contends that although he purchased the logbooks, he did not finance it with the monies provided under the Promissory Note.  Defendant further contends that the parties did not intend the logbooks to be used as collateral and that the contracts only allow Plaintiff to "request a copy of the logbooks solely for the purpose of review, and not to possess the originals or to use them for any other purpose".  Id., p. 25. Defendant's arguments are unavailing.  Section 1 of the Security Agreement provides:

> 1. Security Interest.  Borrower agrees that the Secured Party retains a security interest in the Collateral specified above including, but not limited to, the airframe, engine(s), propeller(s), and spare parts, if applicable, being purchased, and any of the following that are purchased and financed in connection with the [Promissory] Note (a) Any accessories, equipment and replacement parts installed in the Collateral; (b) All Aircraft Maintenance Log information including, but not limited to, Aircraft Maintenance Log Books and receipts and/or work orders for any and all maintenance or repairs performed on the Collateral; (c) Complete damage history of Collateral; and (d) Any proceeds of Insurance policies on the Collateral.

Compl,. Ex. B, § 1 (emphasis added).

The distinction that the loan from Eaglemark went "towards", not "for", the purchase of the Aircraft is not persuasive or supported by any law.  In addition, the plain language of the Security Agreement clearly evidences an intent by the parties to grant a security interest in the logbooks to Plaintiff.  The Security Agreement explicitly grants

---

would not comply with a temporary restraining order, and if Rule 82 A has been complied with, the court shall order issuance of provisional process in property which probably would be the subject of such destruction, harm, concealment, removal, transfer, or violation.

Because Plaintiff is currently in possession of the Aircraft, there is no danger to the Aircraft at this time.  Accordingly, I decline to issue an order of provisional process.

Plaintiff a security interest in the logbooks "purchased and financed in connection with the [Promissory] Note". Id., Ex. 2, § 1. Defendant presents no evidence, including any receipt or financial statement, creating a genuine issue of material fact that the logbooks were purchased with funds other than those received pursuant to the Promissory Note. Plaintiff is therefore entitled to the possession of the Aircraft logbooks.

## II. Defendant's Motions

### A. Plaintiff has a Security Interest in the Aircraft

Defendant seeks a declaration that he has "exclusive and unencumbered title to the Aircraft and its logs, that no other party has any security interest in the Aircraft or its logs, and that [there is] no party . . . to the Promissory Note or the . . . Security Agreement . . . ." Counter-Mot., p. 21. Having concluded that the Promissory Note and Security Agreement were properly assigned to Plaintiff, I decline to issue the declaration which Defendant seeks.

### B. Conversion Through Breach of the Peace

Defendant contends that Plaintiff's breach of the peace when repossessing the Aircraft amounts to conversion. Defendant contends that "Defendant's locked hangar with the Aircraft inside is a locked building with a vehicle in it, indistinguishable from a locked garage with a car in it [and that] [c]ourts have long held that breaking into a gated and locked garage to repossess collateral is a breach of the peace." Counter-Mot., p. 22.

Defendant's arguments fail because he has not properly pled a claim for conversion. Although Defendant alleged in his Answer that Plaintiff demanded access to the Aircraft and that he had unencumbered title to the replacement parts to the engine and alternator, such allegations were made in support of his affirmative defense that Plaintiff

would be unjustly enriched if it were allowed to keep the engine and alternator.

Defendant's Answer, even when construed liberally, does not properly allege a claim for

conversion.

Even if I were to conclude that Defendant sufficiently pled that Plaintiff's breach

of the peace amounted to conversion, his claim would fail.  A secured party's right to

take possession of property in which it has a security interest is governed by ORS

79.0609.  That statute provides:

> 79.0609. UCC 9-609. Secured party's right to take possession after default
> (1) After default, a secured party:
>   (a) May take possession of the collateral; and
>   (b) Without removal, may render equipment unusable and dispose of
>   collateral on a debtor's premises under ORS 79.0610.
> (2) A secured party may proceed under subsection (1) of this section:
>   (a) Pursuant to judicial process; or
>   (b) Without judicial process, if it proceeds <u>without breach of the</u>
>   <u>peace</u>.

ORS 79.0609(1)-(2) (emphasis added).

The Official Comments to UCC § 9-609 provides:

> This section does not define or explain the conduct that will constitute a
> breach of the peace, leaving that matter for continuing development by the
> courts.  In considering whether a secured party has engaged in a breach of
> the peace, however, courts should hold the secured party responsible for
> the actions of others taken on the secured party's behalf, including
> independent contractors engaged by the secured party to take possession
> of collateral.

UCC § 9-609, comt. 3.

Courts in Oregon have not precisely defined the term "breach of the peace".

Notwithstanding the fact that Oregon courts have not explicitly demarcated the term

"breach of the peace" and the number of non-Oregon cases cited by Defendant, I

conclude that Defendant's allegations do not support the conclusion that Plaintiff

breached the peace in this instance. Defendant fails to meet his burden of demonstrating an absence of a genuine issue of material fact that Plaintiff breached the peace when repossessing the Aircraft. In fact, Defendant readily admits that he was not even present at the time Plaintiff removed the Aircraft from its hangar and did not even know that the Aircraft had been repossessed until after Plaintiff had already taken possession of it. See Answer, ¶ 61.

Defendant's pleadings are insufficient to support a claim for breach of the peace. Defendant's motion for summary judgment is therefore denied.

### C. Defendant's Objections

Lastly, Defendant "objects" and moves to strike a number of allegations made by Plaintiff, including Plaintiff's allegation that the Promissory Note and Security Agreement were assigned to Plaintiff and that Plaintiff has a perfected security interest in the Aircraft. Defendant's motion to strike Plaintiff's allegations are improper because as stated above, the Promissory Note and Security Agreement were properly assigned to Plaintiff.

Defendant also objects and moves to strike all the statements by Amy Kaffen ("Kaffen"), the Operations Manager at HDCC, asserted in the Supplemental Certification in Support of Motion for Summary Judgment ("Kaffen Certification"), ¶ 1 (doc. #24). I do not consider the Kaffen Certification when making my determinations and therefore Defendant's objections and motion to strike the Kaffen Certification are overruled and denied, respectively.

/ / /

/ / /

## CONCLUSION

Consistent with this Opinion & Order, Plaintiff's Motion to Dismiss and for

Summary Judgment (doc. #12) GRANTED in part and DENIED in part, Defendant's                    ,

Counter-Motion (doc. #23) is DENIED, Defendant's objections are OVERRULED, and

Defendant's motions to strike are DENIED.

IT IS SO ORDERED.

Dated this ___10___ day of ____Aug____, 2012.

MARCO A. HERNANDEZ
United States District Judge